UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,    :   15-CR-00240(RJD)
                             :
                             :
                             :
        -against-            :   United States Courthouse
                             :   Brooklyn, New York
                             :
                             :
                             :
ZORANA DANIS,                :   Tuesday, May 26, 2015
        Defendant.           :   11:00 a.m.
                             :
                             :

TRANSCRIPT OF CRIMINAL CAUSE FOR A PLEADING
BEFORE THE HONORABLE RAYMOND J. DEARIE
UNITED STATES SENIOR DISTRICT COURT JUDGE
**SEALED PROCEEDINGS**

A P P E A R A N C E S:

For the Government:     LORETTA E. LYNCH, ESQ.
                        United States Attorney
                        Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                        BY:  SAMUEL P. NITZE, ESQ.
                            Assistant United States
                            Attorney

For the Defendant:      WALDEN MACHT & HARAN LLP
                            One Broadway, Sixth Floor
                            New York, New York 10004
                        BY:  SEAN HARAN, ESQ.
                            DEVON LITTLE, ESQ.

Also present:           LOUIS CALVI, PRETRIAL SERVICES OFFICER


Court Reporter:  Lisa Schwam, RPR, CRR, RMR
                 Official Court Reporter
                 Telephone: (718) 613-2268

Proceedings recorded by computerized stenography.  Transcript
produced by Computer-Aided Transcription.

1          (In open court.)

2          THE COURTROOM DEPUTY:  We are on this morning for

3    an arraignment and a pleading.  This is USA versus Zorana

4    Danis.

5          Is that the correct pronunciation?

6          THE DEFENDANT:  Yes, it is.

7          THE COURTROOM DEPUTY:  Thank you, Ms. Danis.

8    Docket No. 15-CR-240, assigned to Judge Dearie.

9          Can I ask the attorneys, please, to note their

10   appearance for the record beginning with counsel for the

11   government.

12         MR. NITZE:  Sam Nitze for the United States.  And

13   I'm joined this morning by Victoria Black, an intern in our

14   office.

15         THE COURT:  Good morning, Mr. Nitze.

16

17

18

19

20         THE COURTROOM DEPUTY:  I'm going to ask you to

21   raise your right hand.

22         (Defendant sworn.)

23         THE COURTROOM DEPUTY:  Thank you very much.

24         THE COURT:  Enter your formal appearance,

25   Mr. Haran.

1          THE COURTROOM DEPUTY:  I'm sorry, Mr. Haran.

2          MR. HARAN:  Sean Haran and Devon Little for

3    Ms. Danis.  Thank you.

4          THE COURT:  Good morning.  Good morning, madam.

5          THE DEFENDANT:  Good morning, your Honor.

6          THE COURT:  I have to ask you a number of

7    questions, as I'm sure counsel has told you.  If there's

8    anything I say that isn't entirely clear to you, don't

9    hesitate to say so.  It's absolutely critical that you

10   understand everything that's being said, everything that's

11   being asked of you.  We're in no hurry.

12         Do you understand?

13         THE DEFENDANT:  Understood.

14         THE COURT:  Along that line, if you wish at any

15   time to confer with counsel, just ask me.  I will give you

16   as much time as you need to confer privately with your

17   attorney.

18         THE DEFENDANT:  Understood.

19         THE COURT:  Bear in mind also as we proceed -- a

20   gentleman has just entered the courtroom.  I assume he is

21   affiliated with --

22         THE COURTROOM DEPUTY:  He is with pretrial.

23         Mr. Calvi, I'm going to ask you, please, to put

24   your appearance on the record for us.

25         PRETRIAL OFFICER:  Good morning.  Good morning,

1  your Honor.  Louis Calvi, United States Pretrial Services.

2          THE COURT:  Mr. Calvi, welcome and good morning.

3          I was saying you're now under oath.  If there's

4  anything I say that isn't -- your answers to my questions

5  must be truthful.  If they were not in any material way, you

6  could subject yourself to further charges in the offense of

7  perjury, which is lying under oath.

8          Do you understand?

9          THE DEFENDANT:  Understood.

10          THE COURT:  May I have your full name, please.

11          THE DEFENDANT:  Zorana Danis.

12          THE COURT:  And how old are you?

13          THE DEFENDANT:  52.

14          THE COURT:  And what schooling or education have

15  you had?

16          THE DEFENDANT:  Georgetown University, bachelor's

17  degree, School of Foreign Service.

18          THE COURT:  I can assume safely that you're fluent

19  in English, which is your native language?  Correct?

20          THE DEFENDANT:  No.  My native language is

21  Serbian.

22          THE COURT:  Okay.  I beg your pardon.

23          Are you currently under the care of any medical

24  professionals?

25          THE DEFENDANT:  No.

1    THE COURT:  Are you taking any medication?

2    THE DEFENDANT:  No.

3    THE COURT:  Is your mind clear this morning?

4    THE DEFENDANT:  Yes.

5    THE COURT:  You're able to concentrate on what I'm

6  saying?

7    THE DEFENDANT:  Yes.

8    THE COURT:  Are you in any discomfort?

9    THE DEFENDANT:  No.

10    THE COURT:  Mr. Haran, in your discussions with

11  your client, have you at any time had difficulty

12  communicating?

13    MR. HARAN:  Absolutely not.

14    THE COURT:  Are you satisfied she understands the

15  rights she will be waiving by waiving indictment and

16  pleading guilty?

17    MR. HARAN:  Yes.

18    THE COURT:  And is she, in your judgment,

19  competent to proceed and capable of understanding the full

20  nature of these proceedings?

21    MR. HARAN:  Yes, your Honor.

22    THE COURT:  Excuse me just a second.  I'm drawing

23  a blank.  I beg your pardon.

24    (Brief pause.)

25    THE COURT:  Ms. Danis, are you satisfied with

1  counsel's representation?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Okay.  You wish to have him continue

4  in their role as your attorney?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Mr. Haran, are you retained in the

7  matter?

8          MR. HARAN:  Yes.

9          THE COURT:  The first piece of business we have is

10  what's commonly referred to as a "waiver of indictment."

11  The offense reflected in the government's information

12  charges a felony violation of law.  A felony is any offense

13  that carries with it a possible sentence in excess of one

14  year.  This is a felony.  It carries with it a sentence well

15  in excess -- a potential sentence of 20 years.

16          Do you understand that?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  The U.S. Attorney does not have the

19  authority to charge you or anyone with any felony violation

20  of law.  You have the right to have a grand jury decide

21  whether or not there is probable cause to believe that

22  you've committed this or any offense.

23          Do you understand that?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  Absent the grand jury's indictment,

1   the U.S. Attorney would be powerless to proceed against you

2   unless you waive your right to proceed before the grand

3   jury.

4           Do you understand that?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  I take it it is your intention to

7   waive your right to proceed before the grand jury?

8           THE DEFENDANT:  Yes, your Honor.

9           THE COURT:  Understand that a grand jury is a

10  group of people drawn from our community, like any other

11  jury, comprised of 23 people, 16 of whom must be present to

12  hear evidence, constitute a lawful quorum, and 12 must

13  conclude after the government's presentation that there is

14  probable cause to believe that you've committed an offense.

15  Then, and only then, would the grand jury be entitled or

16  empowered, I should say, to charge you with a felony

17  violation of law.

18          Do you understand that?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  That means they may or may not indict

21  you for a felony violation.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  As I said before, if they decide there

25  is not sufficient evidence to establish probable cause that

1   you've committed an offense and choose not to return an

2   indictment, the government would on their own be powerless

3   to proceed against you.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  They would have the opportunity to

7   re-present the case to the same grand jury with perhaps

8   additional evidence.  They would have the right to present

9   the matter to a different grand jury, but they could not

10  charge you with a felony absent a grand jury vote of an

11  indictment in the case.

12         Do you understand that?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  Now, knowing that, is it still your

15  intention, do you waive your grand jury presentation?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Any questions about it?

18         THE DEFENDANT:  No.

19         THE COURT:  In the presence and with the advice of

20  counsel, the defendant has fully and voluntarily waived her

21  right to proceed before the grand jury.  And accordingly,

22  the waiver of indictment is accepted by the Court.

23         Is there such a waiver around here, Ellie, because

24  I haven't seen it?

25         THE COURTROOM DEPUTY:  Yes.

1        Do you have the original waiver, Mr. Haran.

2        MR. HARAN:  Absolutely.  Sorry about that.

3        THE COURT:  Your client signed it?

4        MR. HARAN:  Yes.  Thank you.

5        THE COURTROOM DEPUTY:  Thank you.

6        THE COURT:  You read it before you signed it?

7        THE DEFENDANT:  Yes, I did.

8        THE COURT:  Counsel, you witnessed the execution

9   of the waiver?

10        MR. HARAN:  That's true.

11        THE COURT:  I'll add my signature as the presiding

12   judicial officer.

13        So now we proceed, Ms. Danis -- two signatures?

14        THE COURTROOM DEPUTY:  Please.

15        THE COURT:  We proceed just as if the grand jury

16   had indicted you for this offense.

17        Do you understand that?

18        THE DEFENDANT:  Yes, I do.

19        THE COURT:  Now, notwithstanding your agreement

20   with the government, a copy of which I have in front of me,

21   you have an absolute right as you stand there now to enter a

22   plea of not guilty.

23        Do you understand that?

24        THE DEFENDANT:  I do.

25        THE COURT:  As a practical matter, to call it off.

1          Do you follow what I'm saying?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  If you were to plead not guilty, under

4    our Constitution and laws, you'd be entitled to a speedy and

5    public trial by a jury with the assistance of counsel on the

6    charge reflected in the information and perhaps on other

7    charges as well.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  At trial, you would be presumed

11   innocent of any charge or charges.  The government would

12   have to overcome or attempt to overcome this presumption of

13   innocence and prove you guilty by competent evidence and

14   beyond a reasonable doubt.  You would not be required to

15   prove a thing.  You could sit back and do nothing, say

16   nothing; simply put the government to the burden of

17   attempting to satisfy the jury of your guilt.

18         Do you understand that?

19         THE DEFENDANT:  I do.

20         THE COURT:  That means, as a practical matter,

21   that if the government were to fail in any way to establish

22   proof beyond a reasonable doubt, the jury would be obligated

23   under my instructions to find you not guilty even if you

24   committed this offense.

25         Do you understand that?

1    THE DEFENDANT:  Yes, I do.

2    THE COURT:  In the course of the trial, witnesses

3    for the government would be required to come here to the

4    courtroom and testify under oath in your presence and, of

5    course, in the presence of the attorneys.  You would have

6    the right, therefore, to confront each of these witnesses

7    face to face here in the courtroom.  You'd have the right of

8    counsel to cross-examine each of the government's witnesses

9    and, if appropriate, to object to evidence offered by the

10   government.  You'd have the right to offer evidence in your

11   own defense but not the obligation to do so.  And in that

12   regard, you'd have the right to compel the attendance of

13   potential witnesses through the use of a court order or

14   subpoena.

15       Do you understand that?

16       THE DEFENDANT:  Yes, I do.

17       THE COURT:  At trial, you would have the right to

18   testify but, again, no obligation to do so.  You also enjoy

19   a constitutional right or privilege, as we call it, to

20   remain silent and not testify.  And if you decided to do

21   that in consultation with counsel, I would instruct the jury

22   in the strongest possible terms that under no circumstances

23   could they, the jury, hold your decision against you.

24       Do you understand that?

25       THE DEFENDANT:  Yes.

1          THE COURT:  The decision whether or not to

2    testify, just like the decision whether or not to offer a

3    plea of guilty, is yours to make, not counsel.

4          Do you understand that?

5          THE DEFENDANT:  I do.

6          THE COURT:  Now, having said all of that, if you

7    plead guilty and I accept your plea, you will be giving up

8    your right to a trial.  There will be no trial.  With the

9    possible exception of sentence, there is no right to an

10   appeal.  For all intents and purposes, save for sentence,

11   the proceedings ends today.

12         Do you understand that?

13         THE DEFENDANT:  I do.

14         THE COURT:  And finally, before I can actually

15   accept your plea, I'm required under the rules to satisfy

16   myself that you are, in fact, guilty of the charge reflected

17   in the information.  To do that, in just a couple of minutes

18   I'll ask you some questions.  In responding to my questions,

19   Ms. Danis, you obviously give up your right to remain

20   silent.  You'll give up your constitutional right not to

21   incriminate yourself.  And you'll be called upon here in

22   open court this morning to acknowledge your guilt.

23         Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Are you willing then to give up your

1  right to a trial and these other rights I've just explained?

2          THE DEFENDANT:  Yes, I am.

3          THE COURT:  Do you have any questions of me or of

4  counsel?

5          THE DEFENDANT:  No, your Honor.

6          MR. NITZE:  Your Honor, if I may, you asked if

7  Ms. Danis' counsel was retained and he said he was.  I just

8  wanted to make sure that, your Honor, the record was clear

9  that she has a right to counsel appointed if necessary at

10 trial and throughout the proceedings.

11         THE COURT:  Good point.

12         You have an absolute right to an attorney.  If you

13 can't afford an attorney, you have a right to the

14 appointment of counsel by the Court.  Counsel will be paid

15 under the authority of the Criminal Justice Act.

16         Do you understand that?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  This is not a question of your

19 resources.  You have an absolute right to counsel.

20         Do you understand that?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  All right.  So I have before me a

23 document that bears the caption of this case

24

25         MR. HARAN:  This is the original, your Honor.

1            THE COURT:  You have the original?

2            MR. HARAN:  Yes.

3            THE COURT:  It is a 19-page typewritten document

4    containing 22 numbered paragraphs, the final page being the

5    signature page which I take it has now been executed or has

6    not yet been executed?

7            MR. HARAN:  It's been executed.

8            THE COURT:  Have you read that document?

9            THE DEFENDANT:  Yes, I have.

10           THE COURT:  Carefully?

11           THE DEFENDANT:  Very.

12           THE COURT:  You understand that document is a very

13   important document in your life and future.

14           Do you understand that?

15           THE DEFENDANT:  Yes, I do.

16           THE COURT:  Have you read it with that degree of

17   care?

18           THE DEFENDANT:  Yes, I have.

19           THE COURT:  Have you had any questions answered by

20   counsel?

21           THE DEFENDANT:  Yes, I have.

22           THE COURT:  Any questions you'd like to put to me?

23           THE DEFENDANT:  No, your Honor.

24           THE COURT:  All right.  You feel confident that

25   you understand everything in the agreement?

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Does this written agreement, Court

3    Exhibit --

4          THE COURTROOM DEPUTY:  I marked it as Court

5    Exhibit 2.

6          (Court Exhibit 2 received in evidence.)

7          THE COURT:  Thank you.

8          Court Exhibit 2, your agreement with the

9    government, is it complete?  In other words, is your

10   understanding with the government fully and accurately set

11   out in writing in this agreement?

12         THE DEFENDANT:  I do.  I believe so.

13         THE COURT:  Okay.  Mr. Haran, can you confirm

14   that?

15         MR. HARAN:  Yes.

16         THE COURT:  Mr. Nitze?

17         MR. NITZE:  Yes, Judge.

18         THE COURT:  All here.  I'll come back to that in

19   just a moment.

20         With counsel's permission, I will dispense with

21   the reading of the lengthy introduction.

22         MR. HARAN:  Yes, your Honor.

23         THE COURT:  Mr. Haran, is that acceptable?

24         MR. HARAN:  Yes.  We would waive formal reading.

25         THE COURT:  Paragraphs 1 through 34 of the

1  information reflect that introduction, and they are

2  incorporated into the charge as noted in paragraph 35.

3          I begin with paragraph 36, quote, "In or about and

4  between 2000 and 2012, both dates being approximate and

5  inclusive, within the Southern District of New York, the

6  defendant, Zorana Danis, did knowingly and intentionally

7  conspire to devise a scheme and artifice to defraud" -- here

8  we go.  You want to pronounce it for me.

9          MR. NITZE:  CONMEBOL.

10         THE COURT:  "CONMEBOL and FIFA and their

11  constituent organizations of their right to honest and

12  faithful services through bribes and kickbacks, and to

13  obtain money and property by means of materially false and

14  fraudulent pretenses, representations, and promises, and for

15  the purpose of executing such scheme and artifice, to

16  transmit and cause to be transmitted by means of wire

17  communication in interstate and foreign commerce, writings,

18  signs, signals, pictures, and sounds, to wit; wire

19  transfers, telephone calls, and e-mails, contrary to Title

20  18, United States Code, Section 1343."

21         Ms. Danis, are you familiar with that charge?

22         THE DEFENDANT:  Yes, I am, your Honor.

23         THE COURT:  Do you understand what you're charged

24  with?

25         THE DEFENDANT:  Yes, I do.

1    THE COURT:  You're charged with the crime of

2    conspiracy.  What is your understanding of the nature of a

3    conspiracy?  What is a conspiracy?

4    THE DEFENDANT:  My understanding of the nature of

5    conspiracy is an agreement between a number of people to do

6    something that may not be legal or considered correct.

7    THE COURT:  I'll give you a B-plus.  It's an

8    agreement between -- involving at least two people, could be

9    2, could be 2,000, at least 2 people to do something that's

10   in violation of the law.  So it's the agreement to violate

11   the law, not the actual violation but the agreement itself.

12   Understand?

13   THE DEFENDANT:  Understood.

14   THE COURT:  You and I agree to sell cocaine out on

15   Cadman Plaza and we meant it, all right?

16   THE DEFENDANT:  Yes.

17   THE COURT:  We mean it.  We're going to do that.

18   We're going into business.  We've committed a federal crime

19   whether we sell any gram or not.  That's the nature of the

20   offense charged in the information, the agreement.

21   Do you understand that?

22   THE DEFENDANT:  Yes.

23   MR. NITZE:  There's a second charge.  I just

24   wanted to make sure your Honor understood.  There's a Count

25   Two on the following page.

1       THE COURT:  I beg your pardon.  I misread, I sure

2   did.

3       Count Two, again, incorporates the previous

4   allegations and reads as follows:  "On or about April 15,

5   2010, within the District of New Jersey, the defendant,

6   Zorana Danis, a resident of New Jersey, did willfully make

7   and subscribe a United States Corporate Income Tax Return,

8   Form 1120, for International Soccer Marketing, Inc., for the

9   fiscal tax year beginning August 1, 2008, which was verified

10  by a written declaration that it was made under penalties of

11  perjury and which was filed with the Internal Revenue

12  Service, which tax return the defendant, Zorana Danis, well

13  knew was not true and correct as to every material matter,

14  in that said return claimed that ISM paid an 'activation

15  rights fee' of $1.25 million that constituted a deductible

16  business expense, whereas Zorana Danis then and there well

17  knew that the figure was a false and overstated amount that

18  included bribe and kickback payments."

19      Do you understand that allegation?

20      THE DEFENDANT:  Yes, I do.

21      THE COURT:  Okay.  That's pretty straight forward.

22      Any questions about either Count One or Count Two?

23      THE DEFENDANT:  No, your Honor.

24      THE COURT:  All right.  Now, let me return, if I

25  might, to your agreement and discuss with you some important

1    information relative to sentencing.  Paragraph 1 of your

2    agreement sets out, with respect to each count, the

3    penalties provided by law, including the maximum term of

4    imprisonment for each, okay.

5            With respect to Count One, the maximum term

6    available to the Court is 20 years imprisonment.  With

7    respect to Count Two, the maximum term is three years

8    imprisonment.  Each carries with it a period of what we call

9    supervised release if you are sentenced to a term of

10   imprisonment.

11           Supervised release, Ms. Danis, is a period of

12   supervision that begins to run the day you are released from

13   federal custody.  If you were to violate the terms or

14   conditions of your supervised release, you could then be

15   returned to prison on Count One for a period of up to two

16   years, without any credit being given to you for the time

17   you've spent at liberty under supervision.

18           And with respect to Count Two, you could be

19   returned to prison for up to one year, again, without credit

20   for the time you've spent at liberty under supervision.

21           Do you follow that?

22           THE DEFENDANT:  I do.

23           THE COURT:  You also face with respect to Count

24   One a fine of $250,000 or twice the gross gain or loss.

25   With respect to Count Two, a fine of up to $100,000 and the

1  cost of prosecution.  You are required to pay restitution in

2  an amount to be determined by the Court, including

3  restitution to the Internal Revenue Service on Count Two.

4  On each count there is what we call a special assessment of

5  $100 so there's a total there of $200 special assessment.

6  And as a result of your conviction -- you are not an

7  American citizen?

8            THE DEFENDANT:  No.

9            THE COURT:  You may have INS problems.  You may be

10 subject to removal by immigration authorities.

11           Do you understand that?

12           THE DEFENDANT:  Yes, I do.

13           THE COURT:  And with respect to -- and you should

14 understand as well that these penalties by law could run

15 consecutively one after another.

16           Do you understand?

17           THE DEFENDANT:  Yes, I do.

18           THE COURT:  All right.  Those are the statutory

19 penalties that Congress has written into the law.

20           The next part of the sentencing discussion

21 involves what we call the Sentencing Guidelines.  And these

22 guidelines address, among other things, where within this

23 rather broad range of sentencing, for example, on Count One,

24 zero to 20 years, where you should be sentenced.  They are

25 not binding on the Court.  I am required, however, to

1  consider your guidelines in arriving at what the law does

2  require and that is a reasonable sentence.

3          Now, we don't have any guidelines calculations in

4  here, I take it, Mr. Nitze, do we?

5          MR. NITZE:  There is an appeal waiver that

6  references a 71-month sentence which is the government's

7  estimate of the top of the range should the defendant

8  receive two points off for acceptance of responsibility.

9  But there is no calculation set forth in our agreement as a

10 matter of current office policy and Mr. Haran can speak for

11 his client, but I believe she understands that, in any

12 event, the number is an estimate and then it's to your Honor

13 to calculate the guidelines at the time of sentence.

14         THE COURT:  It's strictly the government's

15 estimate.  We just want you to have some idea, as you stand

16 here and offer pleas of guilty, what the government is

17 thinking in terms of the calculation of these advisory

18 guidelines.

19         Do you understand that?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  You just heard Mr. Nitze express it in

22 terms of what we call an appeal waiver, which appears in

23 paragraph 3 of your agreement, whereby you agree not to

24 appeal the sentence or in any way challenge the sentence if

25 the Court imposes a term of imprisonment of 71 months or

1  below.

2          So as I understand this, and this doesn't have to

3  be your understanding, part of the deal here is you've

4  agreed in return for the government accepting these pleas in

5  satisfaction of all charges that you will not appeal the

6  sentence as long as the Court stays at 71 months or less.

7          Is that your understanding?

8          THE DEFENDANT:  Yes, it is.

9          THE COURT:  So there you have it.  You have the

10  statutory penalties.  You have the advisory guidelines.  And

11  then you have the Court's obligation to impose a reasonable

12  sentence.  To do that, I consider the advisory guidelines

13  range.  I consider the submissions of counsel, both

14  Mr. Haran as well as Mr. Nitze.  I consider a series of

15  statutory factors that are about you and the offense and any

16  other information that is germane to the issue of an

17  appropriate sentence.  In considering all that, I am then

18  thereafter required to impose, as I said, what the law

19  recognizes to be a reasonable sentence.

20          All right.  Are you ready to plead?

21          (Brief pause.)

22          THE COURT:  You also have the issue of venue.

23  You're entitled to be charged, prosecuted, in the district

24  where the offenses take place, all right.  You will remember

25  that Count One alleges the Southern District of New York.

1    You stand now this morning in the Eastern District of New

2    York, a bridge away from the Southern District of New York.

3             Count Two alleges a violation in the District of

4    New Jersey where presumably you filed your return or your

5    corporate return.  You're entitled to have those charges

6    heard in those districts.  You may, of course, as I assume

7    is your intention, waive venue as is reflected in paragraph

8    1 of your agreement.

9             Do you understand what I'm saying?

10            THE DEFENDANT:  Yes, I do.

11            THE COURT:  Did you talk to counsel about this?

12            THE DEFENDANT:  Yes, I have.

13            THE COURT:  And you're prepared and willing, as

14   your agreement recites in paragraph 1, to waive not only the

15   indictment but venue with respect to both charges, correct?

16            THE DEFENDANT:  Correct.

17            THE COURT:  Are you ready to plead?

18            THE DEFENDANT:  Yes, I am.

19            THE COURT:  Wait a minute.

20            (Brief pause.)

21            THE COURT:  That's why I have people around.  They

22   correct my mistakes before I put them in the lasting record.

23            There is a forfeiture provision as well I see in

24   the agreement.

25            Mr. Nitze, can you elaborate?

1     MR. NITZE:  Yes, Judge.  The agreement includes $2

2   million of forfeiture.  These are monies that are tied to

3   the proceeds of the unlawful conduct charged in Count One.

4   The forfeiture provision provides that the defendant will

5   pay $500,000 toward that amount within a week of the entry

6   of her plea and the remainder within a year.  We've prepared

7   a forfeiture order for your Honor, which I believe Ellen has

8   to that effect.

9     THE COURT:  I take it, Ms. Danis, this does not

10  come as a surprise to you?

11    THE DEFENDANT:  No.

12    THE COURT:  This is part of the understanding you

13  arrived at with the government?

14    THE DEFENDANT:  Yes.

15    THE COURT:  Any questions of the Court regarding

16  the forfeiture obligation?

17    THE DEFENDANT:  No.

18    THE COURT:  You've read the proposed order of

19  forfeiture?

20    THE DEFENDANT:  Yes, I have.

21    THE COURT:  And reviewed it with counsel?

22    THE DEFENDANT:  Yes, I have.

23    THE COURT:  Mr. Haran, does it comply with the

24  agreement, as far as you understand it?

25    MR. HARAN:  Yes.

1          THE COURT:  Bear with me just a second.

2          (Brief pause.)

3          THE COURT:  I've signed the order.

4          All right.  Ms. Danis, are you ready to plead?  I

5     asked you that once before, but bear with me.

6          What is your plea to Count One?  Guilty or not

7     guilty?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  What is your plea to Count Two?

10    Guilty or not guilty?

11         THE DEFENDANT:  Guilty.

12         THE COURT:  Are you pleading guilty voluntarily?

13         THE DEFENDANT:  Yes, I am, your Honor.

14         THE COURT:  Your own free will?

15         THE DEFENDANT:  Yes.

16         THE COURT:  This is your judgment in consultation

17    with counsel?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Has anybody made any representations

20    or promises to you that are not reflected in this agreement

21    that have contributed to your decision to offer these pleas

22    of guilty?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  Has anybody told you what the sentence

25    will be?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  They have?

3          THE DEFENDANT:  They have.  Well, not what it

4    would be, what it could possibly be.

5          THE COURT:  Big difference.  You were about to

6    make it into my diary.

7          All right.  Count One charges a conspiracy and

8    Count Two charges a false statement on your tax return.

9    Tell me what happened.

10         THE DEFENDANT:  The whole thing?

11         MR. HARAN:  Yes.

12         THE DEFENDANT:  I'm founder and owner of a sports

13   marketing company that focuses on the purchase and sale of

14   sponsorship rights associated with the Copa Libertadores, a

15   soccer tournament played in South America.

16         THE COURT:  What does that mean, sponsorship

17   rights?  Explain that to me.

18         THE DEFENDANT:  It's like taking the MLS,

19   professional soccer, from each country in South America and

20   that the top four teams, champions, vice champions, third

21   and fourth play each other internationally, to get the

22   champion club for the entire continent, the ten countries of

23   South America plus Mexico.

24         THE COURT:  What is sponsorship?

25         THE DEFENDANT:  Sponsorship is the advertising

1    around the perimeter of a soccer field because in soccer

2    there aren't any commercial breaks so during the 45 minutes

3    of each half it's the only exposure that companies can get

4    in soccer.

5              THE COURT:  Okay.  And you buy those rights?

6              THE DEFENDANT:  Correct.

7              THE COURT:  And what do you do with them?

8              THE DEFENDANT:  Resell them to sponsors.

9              THE COURT:  Please proceed.

10             THE DEFENDANT:  I've worked this tournament for

11   more than 15 years and started it from essentially nothing

12   and helped it grow 15 years into today being one of the top

13   five soccer events in the world.

14             Between 2000 and 2012, there were two members of

15   CONMEBOL, which is the South American soccer organization,

16   Continental.  Nicolas Leoz, who is from Paraguay who is

17   President of this organization, and the General Secretary,

18   which was Mr. Eduardo Deluca, who also in their functions

19   were members of FIFA, the worldwide soccer organization.

20             They both began to request bribe and kickback

21   payments in connection with my affiliation to the Copa

22   Libertadores.  I would have rather not had to pay them.

23   However, I did agree to do so.  And I did it in exchange for

24   their continuing support of my position as the exclusive

25   marketing agent for the sponsorship rights to the Copa

1    Libertadores and to protect my ability to keep on reselling

2    and commercializing these rights successfully through the

3    company.

4            I understood at the time, as they were President

5    and General Secretary, that they were important officials of

6    CONMEBOL.  That they were using their positions of authority

7    and trust to enrich themselves.  Other officials of CONMEBOL

8    were aware of these requests for payment.  And I did not

9    formally disclose these payments to the entire organization,

10   which were two bodies.  One was the executive committee,

11   which most members knew.  The other is the full congress,

12   and that was not disclosed formally at the full congress of

13   CONMEBOL.  I also understood that the officials would not

14   voluntarily disclose these payments either.

15           THE COURT:  You mean, the recipients?

16           THE DEFENDANT:  The recipients, correct.

17           I relied on U.S. financial institutions and wire

18   facilities to make these payments.  The company held a bank

19   account at Citibank, the only one that it ever had, and

20   payments went from that account, both legitimate payments

21   for the commercial rights and then payments to these two

22   individuals, and those individuals had accounts both

23   overseas and in the United States.

24           I knew that my conduct in paying these bribes and

25   kickbacks was wrong.  It shouldn't have happened.

1          MR. HARAN:  That's as to Count One, your Honor.

2          THE COURT:  Go ahead.

3          THE DEFENDANT:  Count Two, I willfully filed a

4    corporate tax return for the fiscal tax year beginning

5    August 2008, so August 2008 to July 31st, 2009.  I swore

6    under penalty that the information in the return was true

7    and filed it with the IRS.  I claimed that ISM paid an

8    activation rights fee of $1.25 million as a deductible

9    business expense and, in fact, that figure was not a

10   deductible business expense and part of it was payments to

11   these two individuals.

12         MR. HARAN:  And that was for the -- the tax return

13   was for ISM?

14         THE DEFENDANT:  Correct.  ISM, my company,

15   International Soccer Marketing.

16         MR. NITZE:  Two follow-up points.  One, just that

17   they -- ask the defendant to put on the record that the

18   bribe payments were knowing and intentional.

19         THE COURT:  You knew what you were doing.

20         THE DEFENDANT:  Yes, they were.

21         MR. NITZE:  And secondly, under the tax count, I

22   believe she said under penalty, but just to be clear, that's

23   penalty of perjury.

24         THE COURT:  That's right.  Under penalty of

25   perjury as the form indicates, correct?

1        THE DEFENDANT:  Correct.

2        THE COURT:  Anything else?

3        MR. NITZE:  Nothing further.

4        THE COURT:  Mr. Haran?

5        MR. HARAN:  No, your Honor.

6        THE COURT:  Based on the information given to me,

7   I find that the defendant is acting voluntarily, that she

8   understands her rights and the consequences and possible

9   consequences of her pleas, and that there are factual bases

10  for the pleas of guilty which I now, therefore, formally

11  accept; namely, pleas of guilty to Counts One and Two of

12  information bearing Docket No. 15-CR-240.

13        I urge you at the appropriate time, Ms. Danis, to

14  cooperate with the probation department consistent, of

15  course, with the advice of counsel in their preparation of a

16  presentence report.

17        Shall we set a control date, Mr. Nitze?  If so,

18  when?

19        MR. NITZE:  Perhaps we could set a date six months

20  out.

21        THE COURT:  Just so we don't lose track of each

22  other, let's do just that.  Ellie.

23        THE COURTROOM DEPUTY:  We can put it down for

24  October 9th at 10:00 a.m. as a control date.

25        And Mr. Nitze, I believe we're going to have to

1    set a bond?

2              MR. NITZE:  Yes.

3              THE COURT:  Have you done a report?

4              PRETRIAL OFFICER:  Your Honor, we were unable to

5    finish a written report, but I was here in court today in

6    case your Honor had any questions.  I did have the

7    opportunity to interview Ms. Danis about an hour and a half

8    ago.

9              THE COURT:  Okay.  And you have reached some sort

10   of an understanding with respect to bail?

11             MR. NITZE:  We have, your Honor.

12             THE COURT:  And that is?

13             MR. NITZE:  That the defendant be released on an

14   unsecured bond of $1.5 million.  That the defendant

15   surrender her passport.  That she be restricted to travel

16   within the states of New Jersey and New York

17

18

19

20

21

22             MR. HARAN:  May I have one moment?  Just one

23   moment.

24             (Brief pause.)

25             MR. HARAN:  Your Honor?

1       THE COURT:  Yes.

2       MR. HARAN:  The government -- we have talked.  We

3  have an agreement, but I do have a request; I don't think

4  the government objects.  Ms. Danis's daughter is in Texas

5  and so we would ask that Texas and Florida be added as

6  places that it's likely she would travel on a routine basis

7  so that I don't know that we would need -- I would just ask

8  we put it in the bond, but if we need to go to the Court.

9       THE COURT:  No objection to it, but I want

10  pretrial notified.  We want to know where the woman is at

11  any given time.

12      MR. NITZE:  Absolutely.

13      MR. HARAN:  Absolutely.

14

15

16

17

18      MR. HARAN:  Okay.

19      THE COURT:  What passport do you hold?

20      THE DEFENDANT:  A Belgium passport.

21      THE COURT:  Do you have any other passport?

22      THE DEFENDANT:  No.

23      THE COURT:  Anything else?

24      MR. NITZE:  Pretrial has requested once per month

25  check in by phone with pretrial.  We think that makes sense.

1          THE COURT:  You explained that to Ms. Danis?

2          PRETRIAL OFFICER:  Absolutely.

3          THE COURT:  Anything else?

4          MR. NITZE:  Nothing further on the matter of bail.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21          All right, folks.  Good luck.  We'll see you next

22     time.

23          MR. NITZE:  Thank you, Judge.

24          THE DEFENDANT:  Thank you, your Honor.

25          (Time noted:  11:52 a.m.)

1

2                        **CERTIFICATION**

3    I certify that the foregoing is a correct transcript from the

4    record of proceedings in the above-entitled matter.

5

6

7    Official Court Reporter            December 3, 2015

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25